IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALISON ENDICOTT-QUINONES,
as Guardian ad Litem for DAVID A.,
a minor child,

    Plaintiff,

vs.                                                                                                          No. 1:25-cv-1210

BARBARA VIGIL, in her individual capacity,
EMILY MARTIN, in her individual capacity,
RHONDA MORELAND, in her individual capacity,
NICOLE RAWLINS, in her individual capacity,
PEDRO MENDOZA, in his individual capacity, and
WHITNEY WHITE, in her individual capacity,

    Defendants.

## COMPLAINT FOR FEDERAL CIVIL RIGHTS VIOLATIONS

COMES NOW Plaintiff Alison Endicott-Quinones, as Guardian ad Litem for David A., a minor child, through her counsel, MARTINEZ, HART, SANCHEZ & ROMERO, P.C. (F. Michael Hart, Julio C. Romero and Kelly Stout Sanchez), and states the following Complaint for Federal Civil Rights Violations against Defendants:

### INTRODUCTION

This case arises from deliberate and intentional actions by state officials that exposed children in the state's custody to dangerous conditions and known risks of harm. The consequences of such actions have been devastating. For decades, the New Mexico Children Youth and Families Department (CYFD) leadership has known that the safety and well-being of abused and neglected children - all vulnerable children involuntarily placed in the state's custody - requires stable, home-based foster placement, and that placement in congregate placements (group homes, residential

1

facilities, etc.) pose significant risks of harm. Instead of fulfilling its duties under the law to ensure safety, CYFD officials, including Defendants, have chosen to substitute the cold, bleak cubicles of its offices for family based foster placements. CYFD, including Defendants, has repeatedly made this decision to "house" a child at the CYFD offices, despite knowing the environment is not therapeutic, is violent, and likely to cause each child to emotionally regress.

In 2019, CYFD settled a federal lawsuit[1] stating it agreed:

> that all children in the state's custody were entitled to be placed in stable, safe, appropriate, community based placements in the least-restrictive environment. Children in out-of-home care should have caregivers who understand their strengths and needs and are able to support them to grow and heal. Children in out-of-home placements should be in the least restrictive, most connected, most family-like setting appropriate for their unique needs. Children aged 14 and older should be consulted on their express placement preferences. Children in out-of-home placements should have stable placements that meet their needs and should be protected from the harm caused by multiple placement moves. Foster care should be as temporary an arrangement as possible, with its goal being to provide children in out-of-home placements a safe, nurturing, and permanent home quickly.

Notwithstanding the above declaration, however, beginning in 2020, CYFD began to habitually "place" children at its business offices – the offices where CYFD employees come to work. While mattresses were sometimes brought in so children could sleep on the floor, the building is not designed for lodging or caring for children. It is an office building.

Since 2020, CYFD had steadily and persistently chosen to use its business offices as an unfit placement for children in the state's custody. At the same time, CYFD became aware that children living at the offices were frequently and routinely victims of abuse and neglect in addition to not being in an appropriate and therapeutic placement. CYFD officials knew there were multiple calls to law enforcement to address violent and unsafe conditions and events at the offices.

---

[1] *Kevin S. v. Blalock et al*. No. 1:18 cv-00896

2

## THE PARTIES

1.     Plaintiff Alison Endicott-Quiñones is the court-appointed Guardian ad Litem for David A., a minor child, and a proper party to bring this action on his behalf. Plaintiff Alison Enidocott-Quiñones is a resident of Bernalillo County, New Mexico.

2.     David A. is a minor child who is in the legal custody of the New Mexico Children, Youth & Families Department ("CYFD") as a result of abuse and neglect in his home. Due to the sensitive nature of the allegations contained herein, including child sexual abuse, as well as David A.'s minority and status as a child in CYFD's custody, and pursuant to Fed. Rule Civ. Pro. 5.2(a)(3), Plaintiff asks this Court to permit the minor child to continue proceeding under the pseudonym of "David A." and to permit the parties to continue referring to him in all filed pleadings as "David A." Moreover, Defendants already know the minor child's identity and full name. On balance, Plaintiff submits that David A.'s privacy interests and threat of harm outweigh the value of public disclosure of his identity and full name.

3.     Defendant Barbara Vigil (hereafter "Vigil") was the cabinet secretary of CYFD at all times material to the allegations set forth in this lawsuit. Defendant Vigil is a resident of Santa Fe County, New Mexico. Defendant Vigil was responsible, in whole or in part, for the safety of David A. and other children in CYFD's legal custody.

4.     Defendant Emily Martin (hereafter "Martin") was the Director of CYFD's Protective Services Division at all times material to the allegations set forth in this lawsuit. Defendant Martin is a resident of New Mexico. Defendant Martin was responsible, in whole or in part, for the safety of David A. and other children in CYFD's legal custody.

5.     Defendant Rhonda Moreland (hereafter "Moreland") was CYFD's County Office Manager for Bernalillo County with responsibility for David A. at all times material to the allegations set forth in this lawsuit. Defondant Moreland is a resident of New Mexico. Defendant

Moreland was responsible, in whole or in part, for the safety of David A. and other children in CYFD's legal custody.

6. Defendant Nicole Rawlins (hereafter "Rawlins") was employed as a CYFD Permanency Planning Supervisor with responsibilities for David A. Defendant Rawlins is a resident of New Mexico. Defendant Rawlins was responsible, in whole or in part, for the safety of David A. and other children in CYFD's legal custody.

7. Defendant Pedro Mendoza (hereafter "Mendoza") was employed as a CYFD worker with responsibilities for John Doe on December 5, 2022. Defendant Mendoza is a resident of New Mexico. Defendant Mendoza was responsible, in whole or in part, for the safety of John Doe and other children in CYFD's legal custody.

8. Defendant Whitney White (hereafter "White") was employed as a CYFD worker with responsibilities for David A. on December 5, 2022. Defendant White is a resident of Bernalillo County, New Mexico. Defendant White was responsible, in whole or in part, for the safety of David A. and other children in CYFD's legal custody.

9. At all times material to the allegations set forth in this lawsuit, Defendants Vigil, Martin, Moreland, Rawlins, Mendoza, and White acted within the course and scope of their duties as public employees, were state actors, and acted under color of state law.

10. All of the actions at issue in this lawsuit took place in Bernalillo County and Santa Fe County, New Mexico.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

12. The Court has personal jurisdiction over Defendants.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

**GENERAL ALLEGATIONS**

14. CYFD is the department of New Mexico state government which is solely responsible for the removal and protection of children who are not safe in their homes and must come into the legal custody of the State.

15. The Child Protective Services Division ("CPS") is the division of CYFD responsible for ensuring the safety, permanency and wellbeing of children removed from their family homes and brought into the legal custody of the State.

***Obligations of Defendants as CYFD Officials***

16. Federal Law, New Mexico statute, state regulations and CYFD procedures charge Defendants with the responsibility to care for and provide for the safety of children it has removed from unsafe homes and for whom CYFD has invoked legal proceedings to take the children into its legal and physical custody.

17. Throughout the time that children such as David A. are in their legal and physical custody, Defendants knew they were obligated to ensure the safety and protection of the child.

18. Throughout the time that children such as Davia A. are in CYFD's legal and physical custody, Defendants knew they were obligated to first assess the safety of any placement they made for the child.

19. As the legal guardian for children like David A. in its custody, Defendants had the authority to remove him from placements it knew or reasonably suspected to be unsafe and not in his best interest.

20. Defendants were further obligated to assess how the safety of each child in its legal custody was affected and impacted by the needs, histories and risks posed by other children in the placement.

21. Defendants were obligated to assess how the safety of each child in its legal custody was affected by the skill, training, experience and ability of the adults entrusted to care for the child.

22. Defendants were legally obligated to ensure that each child received proper, appropriate and consistent supervision to ensure the child's safety.

*23.* Defendants were obligated to provide information about each child to the adults entrusted to provide care.

### *Warehousing of Children at the CYFD Office*

24. For decades, it has been best practice in child welfare for children in the legal custody of the government to be placed into family homes.

25. Such best practices have established the minimum levels of care legally required for the state's operation of its child welfare programs through CYFD.

26. The Defendants, and all charged with the governmental duties to provide protective care to children in protective custody knew that the law, policies, procedures and professional directives mandate home foster care settings, and that congregate care settings expose children to adverse experiences.

27. The Defendants knew, recognized and acknowledged that congregate group placements created known, preventable risks to those vulnerable children in custody but despite such knowledge, these Defendants continued to increase their (and the state's) dependence on such unsafe and poorly equipped office placements.

28. Despite knowing that the number of children being warehoused in its CYFD offices was increasing, Defendants never put in place any policy, procedure, or protocol with respect to the provision of care and safety for children when they were placed at the CYFD offices.

29. Despite knowing that the number of children being warehoused in its CYFD offices was increasing, Defendants never provided its employees responsible for supervising and caring for these children with any guidance or information to ensure the safety and wellbeing of these children.

30. At all times relevant to the events alleged in this lawsuit, Defendants had direct access to all information, medical history, psychological history, delinquent history, antisocial behavior history, for each child placed anywhere within the CYFD systems, including children placed at the office.

31. Despite possessing detailed historical information about each child, his/her vulnerabilities, histories of abuse, etc., these Defendants never accessed such information to provide for the safety and care of the children, such as David A., placed at the office.

32. Defendants knew that it was important to provide adults who care for children in the state's custody with information about their medical, educational, mental health, and behavioral issues in order to ensure that the adults charged with their care are able to adequately care and protect them.

33. Defendants knew that it was important to the safety of the children in its custody, like David A., for the adults entrusted with the care and wellbeing of children in its custody to be aware of the risks and dangers posed by other children who may be in the placement as well.

34. It was CYFD policy and procedure to share such information about children in the state's custody with the adults it was entrusting with their care when placing them in a foster home.

35. Despite knowing the importance of sharing such information with the adults charged with caring for these children in the state's custody, Defendants did not provide that critical information to the adults charged with the safety and wellbeing of these children when they were

warehoused at the CYFD offices – a place where it was even more important that their safety be placed as priority.

36. At all times material to the allegations set forth in this lawsuit, Defendants Vigil and Martin were high level CYFD officials responsible for the operation of the Protective Services Division that was charged with the care, safety, and wellbeing of children in the State's legal custody.

37. At all times material to the allegations set forth in this lawsuit, Defendants Moreland and Rawlins were Bernalillo County supervisors directly responsible for David A.'s care, safety and wellbeing while he was in CYFD custody in December 2022.

38. At all times material to the allegations set forth in this lawsuit, Defendants Mendoza and White were Bernalillo County CYFD workers directly responsible for overseeing David A. and John Doe's safety on December 5, 2022 while they were placed at the CYFD office.

***December 5, 2022***

39. On December 5, 2022 Defendants warehoused David A. at the Bernalillo County CYFD office rather than find him a safe and proper placement.

40. At the time Defendants had David A. stay at the CYFD office on December 5, 2022, David A. was 10 years old.

41. At the time Defendants had David A. stay at the CYFD office on December 5, 2022, David A. had a significant history of abuse and neglect in his biological home, including a history of sexual abuse.

42. As a result of David A.'s past history of sexual abuse as well as his young age, Defendants knew that David A. was vulnerable to future abuse and exploitation by other adults or older children.

43. On December 5, 2022, Defendants also warehoused John Doe, a 14-year-old in the legal and physical custody of the State, in its Bernalillo County CYFD office rather than find him a safe and proper placement.

44. At the time Defendants had John Doe stay at the CYFD office on December 5, 2022, John Doe had a significant history of violence, aggression, and sexual assault and harassment towards other children.

45. At the time Defendants had John Doe stay at the CYFD office on December 5, 2022, Defendants knew of John Doe's history of violence, aggression, and sexual assault and harassment towards other children.

46. Despite knowing about John Doe's past history of violence, aggression, and sexual assault and harassment towards other children, Defendants did not raise this concern with Defendants Mendoza and White, the CYFD officials charged with supervising and caring for John Doe and David A. on December 5, 2022.

47. Despite the obvious risks these children's documented histories presented, and notwithstanding the inherent dangers placing the two children together in an office setting, Defendants failed to provide any information about either John Doe or David A. to Defendants Mendoza and White who were charged with supervising and caring for the children on December 5, 2022.

48. Defendants failed to create, implement, or provide any policy, procedure or training for its CYFD officials they charged with supervising and caring for the children in the CYFD offices, including David A. and John Doe, regarding supervision of and use of bathrooms at the CYFD offices.

49. Defendants knew the bathrooms at the CYFD offices posed potentially significant risks if children were left unsupervised, and as a result, CYFD kept all of the bathroom doors locked – allowing access only with permission from an adult CYFD employee.

50. On December 5, 2022 David A. and John Doe were playing together at the CYFD offices.

51. During this time, Defendant Mendoza was on his cell phone and leaving the supervision to Defendant White for both boys.

52. Both David A. and John Doe asked Defendants Mendoza and White if they could both go to the bathroom.

53. Defendant Mendoza, who was charged with the supervision and care of John Doe, chose to allow 10-year-old David A. to go into the bathroom together with the 14 year old, despite the older child's documented history of violence, aggression, sexual assault and sexual harassment of other children. After David A. and John Doe had been in the bathroom for some time, Defendant Mendoza went into the bathroom and saw both boys with their pants down in the same stall, John Doe was facing David A.'s backside and John Doe's penis was erect.

54. David A. later disclosed that John Doe sexually assaulted him in the CYFD office bathroom.

55. Following the December 5, 2022, incident with David A. and John Doe, despite significant law enforcement involvement and condemnation from multiple sources, Defendants chose not to implement any meaningful changes to any aspect of its ongoing practice placing children at the office.

56. In fact, from December 2022 through 2024, the number of children warehoused at the CYFD offices continued to increase.

57. Defendants further failed to implement any policy, procedure, protocol or training for CYFD employees regarding the care and protection for children in the CYFD offices.

58. As a result of Defendants' continued failures to address the known safety concerns for children in its legal custody, more and more children suffered injury and harm at the CYFD offices.

## COUNT I
### Violation of David A.'s Right to Substantive Due Process

59. All previous allegations are incorporated by reference as if fully set forth herein.

60. David A. had a fundamental right, protected by the Fourteenth Amendment to the United States Constitution, not to be placed in an improper, inadequate, or injurious environment by the State of New Mexico, through its departments, officers, employees and agents, including Defendants Vigil, Martin, Moreland, Rawlins, Mendoza and White.

61. Once David A. had been removed from his biological family and was within the State of New Mexico's legal custody and physical control, David A. was wholly dependent for his basic human needs such as food, shelter, clothing, personal care, medical care, safety and his overall wellbeing on the caregivers selected for him by Defendants.

62. Defendants Vigil, Martin, Moreland, Rawlins, Mendoza and White were employees of CYFD who engaged in a series of actions and judgments that resulted in the improper and unsafe placement of David A. into the CYFD office on December 5, 2022.

63. At all times material to the allegations set forth in this lawsuit, Defendants had the exclusive authority, pursuant to the New Mexico Children's Code and state regulations, to determine the placement of where David A. would reside.

64. At all times material to the allegations set forth in this lawsuit, Defendants had the exclusive authority and were legally required to ensure David A.'s safety, permanency and wellbeing.

65. At all times material to the allegations set forth in this lawsuit, Defendants had the exclusive authority and were legally required to assess all placements for David A. first and foremost with regard to whether the placement was safe for him.

66. Defendants knew and had access to David A.'s complete CYFD file which documented his specific history and vulnerabilities.

67. Defendants knew that David A. was vulnerable and in need of protection and safety.

68. Defendants knew and had access to John Doe's complete CYFD file which documented his specific history, past incidents of harming other children, and risks.

69. Defendants knew that John Doe posed a particular risk of harm to younger children like David A. given his history of aggression, violence, sexual harassment and assault upon other children in his earlier placements.

70. Despite this knowledge, Defendants did not take action to protect David A. from the known and obvious danger posed to him not just by placement at the CYFD office, but specifically posed to him by John Doe.

71. Despite this knowledge, Defendants did not ensure that the caretakers they assigned to David A. and John Doe were aware of the specific risks and vulnerabilities of each child.

72. Indeed, Defendants did nothing to prevent David A. from being severely and grievously harmed while under the direct supervision of CYFD employees.

73. Despite this knowledge, Defendants did not ensure that the caretakers they assigned to David A. and John Doe received any guidance, support, and training regarding how to supervise and protect children placed at the CYFD office.

74. Defendants never held the required staffing and determination of "emergency" circumstances necessary to allow David A. to stay at the CYFD office on December 5, 2022.

75. Defendants never held the required staffing and determination of "emergency" circumstances necessary to allow John Doe to stay at the CYFD office on December 5, 2022.

76. Despite their extensive knowledge of the grave safety risks to David A. and other children like him staying at the CYFD offices, Defendants ignored the grave safety risks, failed to protect David A., and failed to exercise professional judgment.

77. Defendants recklessly and willfully ignored pertinent information of which they were aware, detailed herein, that directly addressed the identified risk to David A. – the inappropriate and unsafe condition of the CYFD offices; the failure of CYFD officials Defendants charged with the care of children to have any guidance, support and training on the care of children while at the CYFD office; and their direct knowledge of John Doe's specific risk of sexual assault and violence to other children.

78. Defendants recklessly ignored and willfully bypassed established professional practices and their own acknowledgment of the problems and dangers posed to children by warehousing them at CYFD's offices in making the decision to place David A. in the CYFD office.

79. Defendants further recklessly ignored and willfully bypassed established professional practices and their own acknowledgement of the problems and dangers posed to children by warehousing them at CYFD's offices when they made the decision to place John Doe in the CYFD office.

80. The actions of Defendants, as set forth herein, substantially departed from accepted professional practices or standards in such a way as to abdicate reliance on professional judgment, and knowingly or recklessly subjected David A. to danger that was known or obvious to Defendants.

81. Defendants Vigil, Martin, and Moreland, in addition to their direct participation in such misconduct, also approved, ratified, authorized and otherwise facilitated the unconstitutional conduct of their employees as no changes were implemented to protect children in their custody placed in the CYFD offices.

82. The conduct of Defendants was knowing, unlawful, deliberate, indifferent, malicious, reckless, wanton and conscience-shocking.

83. But for the actions and conduct of Defendants described herein, David A. would not have been placed and allowed to continue to reside in the known dangerous environment of the CYFD offices.

84. But for the actions and conduct of Defendants described herein, David A. would not have been placed into the known dangerous environment of unsupervised contact with John Doe.

85. As a direct result of the acts of Defendants as set forth herein, David A. suffered sexual assault, physical pain, emotional distress, and severe mental anguish in connection with the deprivation of his constitutional rights.

## JURY TRIAL

86. Plaintiff respectfully requests a jury trial in the above entitled and numbered cause.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her favor and against Defendants Vigil, Martin, Moreland, Rawlins, Mendoza and White for the following:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages in an amount sufficient to punish Defendants for their intentional, reckless, and indifferent conduct and violation of David A.'s constitutional rights and to deter such violations in the future; and

C. Reasonable attorneys' fees and costs of suit under 42 U.S.C. § 1988.

Respectfully Submitted,

**MARTINEZ, HART,
SANCHEZ & ROMERO, P.C.**

*Electronically filed*
*/s/ F. Michael Hart*
F. Michael Hart
Julio C. Romero
Kelly Stout Sanchez
1801 Rio Grande Blvd. NW
Albuquerque, NM 87104
(505) 343-1776
(505) 344-7709 facsimile
mikeh@osolawfirm.com
julior@osolawfirm.com
kellys@osolawfirm.com

***Attorneys for Plaintiff***